# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

| | | |
|---|---|---|
| **In the Matter of the Search of** | ) | OCT 29 2019 |
| | ) | |
| INFORMATION ASSOCIATED WITH | ) | No. 4:19 MJ 7406 SPM |
| rainamadison93@yahoo.com THAT IS STORED AT | ) | |
| PREMISES CONTROLLED BY Oath Holdings Inc. | ) | **FILED UNDER SEAL** |
| | ) | |
| (See Attachment A.) | ) | |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, ___Robert Lang___, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

**rainamadison93@yahoo.com** (hereinafter referred to as the "**Subject Account**") located at 701 First Avenue, Sunnyvale, California 94089

located in the ___Northern___ District of ___California___, there is now concealed

### See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    X evidence of a crime;
    X contraband, fruits of crime, or other items illegally possessed;
    X property designed for use, intended for use, or used in committing a crime;
    a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. Section 846 and 841(a)(1) | conspiracy to posses with intent to distribute controlled substance(s) |
| Title 18, U.S.C. Section 1956 and 1957 | money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

    ✓ Continued on the attached sheet.
    ❑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

**Robert Lang, DEA Task Force Officer**

Sworn to before me and signed in my presence.

Date: ___10/29/2019___

City and State: ___St. Louis, MO___

*Judge's signature*
Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*
AUSA: Erin O. Granger

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | ) | |
| INFORMATION ASSOCIATED WITH | ) | No. 4:19 MJ 7406 SPM |
| rainamadison93@yahoo.com THAT IS | ) | |
| STORED AT PREMISES CONTROLLED | ) | |
| BY Oath Holdings Inc. | ) | FILED UNDER SEAL |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Robert Lang, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) and Federal Criminal Procedure 41 for information associated with a certain account, **rainamadison93@yahoo.com**, that is stored at premises controlled by Oath Holdings Inc., an email provider headquartered at 701 First Avenue, Sunnyvale, California 94089 (hereinafter referred to as "the Provider").  The information to be searched is described in the following paragraphs and in Attachment A.  The search warrant would require the Provider to disclose to the United States copies of the information (including the content of communications) further described in Attachment B.  Upon receipt of the information described in Section I of Attachment B, United States-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I have been employed as a Task Force Office with the Drug Enforcement Administration (DEA) for approximately ten years and am currently assigned to the DEA St. Louis Field Division Office.  I am a sworn Police Officer for the St. Louis Metropolitan Police Department (SLMPD) and have been employed by SLMPD for approximately 30 years.  During my tenure with DEA, I have been assigned to conduct long-term complex investigations of drug-trafficking organizations dealing in heroin, fentanyl, cocaine, methamphetamine, marijuana and

other controlled substances. Based on my training, experience, the experience of the overall investigative team, and my own participation in controlled substance investigations, I am familiar with the methods of operation of drug traffickers. I am familiar with and have used normal methods of investigation, including, but not limited to, physical and electronic surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, exploitation of e-mail and other forms of social media utilized for communication, utilization of undercover agents and the use of court-authorized wire and electronic intercepts. I have also received specialized training from the United States Department of Justice and DEA.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846 and 841(a)(1) and violations of Title 18, United States Code, Sections 1956 and 1957 (hereinafter referred to as "the subject offenses") have been committed by Gerald Hunter, Raina Madison and other individuals. There is also probable cause to search the location described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## LOCATION TO BE SEARCHED

5.      The location to be searched is:

**rainamadison93@yahoo.com** (hereinafter referred to as the "**Subject Account**") located at 701 First Avenue, Sunnyvale, California 94089, further described in Attachment A. The items to be reviewed and seized are described in Attachment B.

2

**JURISDICTION**

6.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**BACKGROUND CONCERNING EMAIL**

7.     In my training and experience, I have learned that the Provider provides a variety of on-line services, including electronic mail ("email") access, to the public.  The Provider allows subscribers to obtain email accounts at the domain name **yahoo.com,** like the email account listed in Attachment A.  Subscribers obtain an account by registering with the Provider.  During the registration process, the Provider asks subscribers to provide basic personal information.  Therefore, the computers of the Provider are likely to contain stored electronic communications (including retrieved and unretrieved email for the Provider subscribers) and information concerning subscribers and their use of the Provider services, such as account access information, email transaction information, and account application information.   In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

8.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and my experience, I know that, even

3

if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

9.      In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

10.      In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

11.      As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or

4

alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

12.     In general, an email that is sent to the Provider is stored in the subscriber's "mail box" on the Provider's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on the Provider's servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on the Provider's servers for an extended period of time and, in some circumstances, indefinitely.

5

## PROBABLE CAUSE

*Overview of investigation*

13.    Your affiant is a member of an investigative team investigating the criminal activities of Gerald Fitzgerald Hunter, Walter Justiniano, Raina Madison, and others.  The investigation to date has established that Hunter, Justiniano, Madison, and others were engaged in an ongoing conspiracy to distribute fentanyl and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and conspiracy to launder drug proceeds in violation of 18 U.S.C. §§ 1956 and 1957.

14.    In December 2016, DEA, St. Louis, Missouri, initiated an investigation into a Drug Trafficking Organization (DTO).  During the course of this investigation, investigators identified Andon Demarcus Templer as a member of the organization and a source of supply to Bryan Warren.  On behalf of the DTO, Templer distributed fentanyl and cocaine within the Eastern District of Missouri to Bryan Warren and other individuals.  Investigators also identified Gerald Fitzgerald Hunter as an out of state source of supply of fentanyl and cocaine to Templer and other members of the organization.  Walter Justiniano would assist Hunter with the transportation of fentanyl and cocaine from Los Angeles, California to St. Louis, Missouri.  Additionally, Kashita Webb and Raina Madison served as facilitators in the transporting of drug shipments and drug proceeds.  Madison would purchase airline tickets on behalf of Walter Justiniano and Gerald Hunter in order for Hunter and Justiniano to be able to fly from Los Angeles, California to St. Louis, Missouri to conduct drug transactions.  Webb would then purchase some of the return flights for Hunter and Justiniano.  Madison also purchased two vehicles, Nissan Rogues, with cash.  Madison then paid for those vehicles to be shipped from California to St. Louis, Missouri.  Members of the DTO would conduct drug transactions and conceal the drug proceeds within those vehicles.  The vehicles were then returned to California with the drug proceeds.

*Details of the Investigation*

6

15.     Between September 29, 2016, and January 12, 2017, a confidential source (CS)[1] conducted eight controlled purchases of fentanyl from Bryan Warren.  Specifically, CS purchased fentanyl from Warren on September 29, 2016; October 4, 2016; October 13, 2016; October 19, 2016; October 28, 2016; November 9, 2016; December 19, 2016; and January 12, 2017.

16.     On February 6, 2017, agents received authorization for a Title III wiretap on three of Warren's phones.  During the interception of communications over these phones, agents learned that Andon Templer was supplying Warren.

17.     On March 7, 2017, agents received judicial authorization to continue the monitoring of Warren's phones and to begin intercepting wire and electronic communications of one of Templer's phones.  On March 16, 2017, agents intercepted a series of calls between Bryan Warren and David Campbell.  During this call, Warren and Campbell agreed to meet in order for Warren to re-supply Campbell.  Investigators followed Campbell to one of Warren's residences on Hodiamont Street, St. Louis, Missouri.  An officer with the St. Louis Metropolitan Police Department later conducted a traffic stop of Campbell.  Campbell provided the officers with consent to search his vehicle and officers seized 51.41 grams of fentanyl from the center console of Campbell's vehicle.

18.     On April 17, 2017, officers conducted a controlled buy of fentanyl from Warren for $3,600 in U.S. currency.  Following the buy, investigators seized 47.4 grams of fentanyl which was

---

[1] CS cooperated for monetary purposes.  CS had known Warren for approximately 15 years.  CS and Warren grew up in the same area and were part of some of the same social circles.  In 1998, CS was convicted of Robbery 2nd.  CS also has convictions from 2003, 2005, and 2012 for Possession of a Controlled Substance.  CS has arrests for weapons violations and assault but was not prosecuted for those arrests.  CS provided information to investigators which led to over ten arrests as well as seizures of narcotics and weapons.  CS has provided reliable information that has been corroborated by other sources of information including information obtained through recorded phone calls with Bryan Warren and through controlled purchases of fentanyl from Warren.

7

provided by Warren.  On April 24, 2017, investigators conduced another controlled purchase wherein they seized 488 grams of fentanyl provided by Warren.

19.　　On April 19, 2017, investigators observed Templer meet with Forestell Sheppard at the OSG Towing lot at 3840 Cote Brilliante, St. Louis, Missouri.  Both men drove from the tow lot to the residence located at 2945 Delmar.  Both men entered the residence and remained for less than ten minutes.  Both men exited the residence and drove directly back to the tow lot where upon arrival, Templer exited Sheppard's vehicle and returned inside the tow lot.  Investigators later stopped Sheppard and seized approximately 82.04 grams of cocaine.

20.　　On April 27, 2017, investigators intercepted an incoming call from Gerald Hunter to Templer.  During the call, investigators learned that Hunter would be arriving in St. Louis, Missouri from California.  Investigators later observed Hunter, Walter Justiniano, and Kashita Webb drive to a storage locker.  Hunter entered the storage locker and removed two large bags. He then placed those bags into a vehicle driven by Webb. When confronted by investigators, Hunter dropped the bags and fled on foot.  Both Justiniano and Webb were detained.  Investigators searched the two bags and located twenty-seven (27) heat-sealed bags containing approximately 26.5 kilograms of fentanyl.  Hunter has been declared a fugitive.

21.　　On April 27, 2017, investigators learned through a source of information that Raina Madison booked Southwest Airline tickets for Hunter and Justiniano. The tickets were purchased on April 26, 2017 as one-way flights from Los Angeles International Airport to St. Louis Lambert International Airport departing on April 26, 2017.  The billing party on the tickets is listed as

8

Rachel Madison, phone number: (323) 481-3045[2]; e-mail address: rainamadison93@yahoo.com (**Subject Account**); and address: 2311 S. Cloverdale Avenue, Los Angeles, California.  On this date, Raina Madison's address listed on her California Driver's License was 1347 Carmona Avenue, Los Angeles, California.

22.     On April 28, 2017, search warrants were authorized for several locations throughout the St. Louis area, including 2945 Delmar, St. Louis, Missouri.  Investigators executed those search warrants and searched a vehicle owned by Webb.  Following the search of Webb's vehicle, investigators obtained two Bills of Lading for a 2015 Nissan Rogue which listed Raina Madison as an interested party.  The Bills of Lading listed two different pick up locations in the Los Angeles area: 2311 Cloverdale Avenue, Los Angeles, California 90016 and 5256 Washington Boulevard, Los Angeles, California 90016.  Both pick up locations listed Raina Madison as the point of contact.  Both Bills of Lading also listed 3050 St. Catherine Street, Florissant, Missouri as the delivery location.  Webb's mother resided at this delivery location.  Investigators believed the vehicles were being shipped between Los Angeles and St. Louis for the purpose of transporting either proceeds or controlled substances.

23.     Based on information derived from the source of information, Southwest Airline tickets, and Bills of Lading, investigators continued to investigate Raina Madison's involvement with Hunter and his drug distribution.  On May 11, 2017, United States Magistrate Judge John M. Bodenhausen signed an order authorizing investigators to receive precision location information (PLI) data from (323) 839-3012, a cellular telephone number utilized by Madison.  On May 17,

---

[2] Phone number (323) 481-3045 was a Sprint brand cellular telephone subscribed to Raina Madison of 1347 Carmona Avenue, Los Angeles, California at the time the Southwest Airline tickets were issued to Hunter and Justiniano.

9

2017, investigators utilized PLI data to locate Madison in the Los Angeles area. Investigators introduced themselves and spoke with Madison. During the conversation Madison stated that she was Hunter's god-daughter. Investigators questioned Madison about whether she had ever purchased airline tickets for Hunter and/or Walter Justiniano. Initially, Madison denied ever purchasing tickets for either Hunter and/or Justiniano. Madison then admitted to booking the Southwest Airline tickets for Hunter and Justiniano to travel from Los Angeles to St. Louis on April 27, 2017. Madison stated she purchased the tickets at Hunter's request because he (Hunter) did not possess a credit card to make the purchases himself. Madison then admitted to being an interested party in the shipping of a 2015 Nissan Rouge, on two occasions, from Los Angeles to St. Louis; however, Madison declined to further explain her exact role in making the shipments nor was she willing to explain why she shipped the vehicles. Investigators asked Madison if she was employed. Madison stated that she was not employed at the time, but a full-time college student.

24. █████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████

████████████████

25. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

26. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[4] A "trap" is slang for a hidden compartment utilized to conceal contraband.

11

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████

27.    ████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████

28.    Beginning in April 2017, and continuing through the present, investigators have obtained documents from businesses and cooperators, related to Madison's involvement in drug distribution and money laundering for Hunter. The documents include, but are not limited to, bank account records, airline ticket records, vehicle shipment records, furniture shipment records, storage unit records, self-service moving rental equipment records, and e-mails. Those documents and records ultimately led to the identification of two e-mail accounts utilized by Madison: **rainamadison93@yahoo.com** (**Subject Account**) and rainamadison93@gmail.com. The e-mail addresses were listed by Madison as points of contact as set out below. Madison also utilized the two e-mail accounts to communicate with businesses and utilized the **subject account** to communicate with a co-conspirator to facilitate drug trafficking and money laundering.

***Madison's use of rainamadison93@yahoo.com ("Subject Account")***

29.    Upon analysis of records received from American Airlines, Southwest Airlines, Public Storage, U-Haul, and Montway Auto, investigators observed that the **Subject Account** was

12

utilized for the purpose of customer contact information, correspondence, and/or billing for Raina Madison.

30.     On February 1, 2015, the **Subject Account** was listed as a customer point of contact with the Public Storage located at 1459 W. 190th Street, Gardena, California for Raina Madison. Madison rented a storage locker at this location from February 1, 2015 through October 28, 2015. This investigation has shown that Madison, Hunter, and Justiniano utilized storage lockers to store controlled substances that were hidden within pieces of furniture before they were picked up by over-the-road moving companies and transported to St. Louis, Missouri.  Investigators have documentation from Allied Van Lines showing that on February 18, 2015, Madison signed bill of lading for the pick-up of household goods from the Public Storage located in Gardena, California to be shipped to 1311 Warren Street, St. Louis, Missouri.

31.     Between the dates of February 1, 2015 and October 23, 2017, the **Subject Account** was listed on seventeen separate occasions as a method of contact for Raina Madison with U-Haul. According to records from U-Haul, Madison rented various pieces of moving equipment (i.e. moving dollies) and moving vans.  Investigators believe that Madison was renting the equipment in order for her, or another one of Hunter's criminal associates, to more easily transport controlled substances and/or furniture the controlled substances were hidden in.

32.     On February 20, 2015, the **Subject Account** was listed as a point of contact for Raina Madison to reserve the shipment of a 2010 Nissan Rogue from 2011 S. Orange Drive, Los Angeles, California 90016 to 1311 Warren St. St. Louis, Missouri 63106 with Corsia Logistics. Records demonstrate that the vehicle was picked up on February 23, 2015 and delivered on February 26, 2015.  Information derived from CD#1 and CD#2 indicates to investigators that this Nissan Rogue, as well as others, was shipped from Los Angeles to St. Louis so that the proceeds

from the sale of drugs in St. Louis (drugs sold by the DTO headed by Hunter) could be secreted in the vehicle and driven back to Los Angeles.

33.    Between the dates of March 12, 2015 and April 6, 2017, the **Subject Account** was listed as a point of contact with Montway Auto Transport five times for Raina Madison to reserve the shipment of multiple Nissan Rogues from Los Angeles, California to St. Louis, Missouri. All five of the shipment reservations involved the Nissan Rogues being delivered to 3050 St. Catherine Street, Florissant, Missouri. On February 26, 2017, Madison corresponded with Montway utilizing the **Subject Account**. Madison stated "I accept" to an e-mail inquiry sent by Montway regarding the terms of the shipment. It should also be noted that the shipment initiated on April 6, 2017 was booked, but never completed. As previously stated, the vehicles were shipped from Los Angeles to St. Louis for the purpose of transporting drug proceeds from St. Louis to Los Angeles.

34.    Between the dates of January 22, 2016 and April 10, 2017, the **Subject Account** was utilized on twenty separate occasions while making American Airline ticket reservations. The **Subject Account** was listed as a method of contact for Raina Madison to confirm the bookings. On all of those occasions, Madison booked the air travel of Justiniano and Hunter between Los Angeles International Airport (LAX) and St. Louis Lambert International Airport (STL). Information gleaned from this investigation has shown that Justiniano and Hunter traveled between LAX and STL in order to oversee deliveries of cocaine and/or fentanyl to the St. Louis area.

35.    Between the dates of January 22, 2016 and April 26, 2017, the **Subject Account** was utilized on four separate occasions while making Southwest Airline ticket reservations. Madison listed the **Subject Account** as a method of contact to confirm her bookings. Specifically, on all of those occasions, Madison booked the air travel of Justiniano and Hunter between Los Angeles International Airport (LAX) and St. Louis Lambert International Airport (STL). Madison utilized the **Subject Account** on April 26, 2017 as a point of contact when booking Hunter and

14

Justiniano's flights from LAX to STL on April 27, 2017.  On April 27, 2017, and as previously mentioned in this affidavit, investigators observed Hunter and Justiniano removing approximately 26.5 kilograms of fentanyl from a storage locker in St. Louis, Missouri.  Justiniano was arrested; Hunter fled on foot; and the fentanyl was seized.

36.     On June 28, 2016, the **Subject Account** was listed as a point of contact with Nationwide United Auto Transport for Raina Madison when reserving the transportation of a Nissan Rogue from Los Angeles, California to 3050 St. Catherine Street, Florissant, Missouri.

37.     In September 2019, CD#1 provided investigators with e-mail correspondence between him/her and Madison.  The emails were sent between October 22, 2014 and December 15, 2016 from CD#1's email address and Madison utilizing the **Subject Account**.  In total, CD#1 provided fourteen e-mails that were exchanged during that time period.  Twelve of the e-mails were sent by the **Subject Account** in regards to the travel of Hunter and Justiniano and two of the e-mails were sent by CD#1 in regards to the location of storage lockers in the St. Louis, Missouri area.  This investigation has shown that Hunter and Justiniano were traveling from Los Angeles, California to St. Louis, Missouri in order to oversee the delivery of cocaine and/or fentanyl to the St. Louis area and that Madison was the purchaser or individual who booked the tickets facilitating their travel. The investigation has also shown that Madison, Hunter, and other members of the DTO were utilizing storage units to store, prepare, and distribute controlled substances in both Los Angeles and St. Louis.

***Madison's Use of Google E-Mail Account rainamadison93@gmail.com***

38.     Upon analysis of records received from Southwest Airlines, American Airlines, Public Storage, U-Haul, Montway Auto, and Ship Your Car Now Inc., investigators learned that Madison utilized Google E-Mail account rainamadison93@gmail.com for the purpose of customer contact information, correspondence, and/or billing.

15

39.     On November 12, 2015, the email account of rainamadison93@gmail.com was utilized as a point of contact with Ship Your Car Now Inc. for Raina Madison when reserving the transportation of a Nissan Rogue from Los Angeles, California to 3050 St. Catherine Street, Florissant, Missouri.

40.     Between the dates of January 20, 2016 and September 29, 2016, Madison utilized the email account of rainamadison93@gmail.com on three separate occasions while making Southwest Airline ticket reservations.  Rainamadison93@gmail.com was listed as a method of contact for Raina Madison to confirm her bookings.  Specifically, on all of those occasions, Madison booked the air travel of Justiniano and Hunter between Los Angeles International Airport (LAX) and St. Louis Lambert International Airport (STL).

41.     On July 20, 2016, the email account of rainamadison93@gmail.com was listed as a customer point of contact with the Public Storage located at 12681 W. Jefferson Boulevard, Los Angeles, California for Raina Madison.  Madison rented a storage locker at this location from July 20, 2016 through August 26, 2017.  This investigation has shown that Madison, Hunter, and Justiniano utilized storage lockers to store controlled substances that were hidden within pieces of furniture before they were picked up by over-the-road moving companies and transported to St. Louis, Missouri.

42.     Between the dates of August 18, 2016 and October 4, 2017, the email account of rainamadison93@gmail.com was listed on five separate occasions as a method of contact with U-Haul for Raina Madison. According to records from U-Haul, Madison rented various pieces of moving equipment (i.e. moving dollies) and moving vans.  Investigators believe that Madison was renting the equipment in order for her, or another one of Hunter's criminal associates, to more easily transport controlled substances and/or furniture the controlled substances were hidden in.

16

43.    On October 11, 2016, the email account of rainamadison93@gmail.com was utilized while making American Airline ticket reservations. Madison listed rainamadison93@gmail.com as a method of contact to confirm her bookings. Specifically, on this date, Madison booked the air travel of Justiniano and Hunter between Los Angeles International Airport (LAX) and St. Louis Lambert International Airport (STL). Information gleaned from this investigation has shown that Justiniano and Hunter traveled between LAX and STL in order to oversee deliveries of cocaine and/or fentanyl to the St. Louis area.

44.    On January 24, 2017, the email account of rainamadison93@gmail.com was listed for Raina Madison as a point of contact with Montway Auto Transport while reserving the shipment of a Nissan Rogue from Los Angeles, California to St. Louis, Missouri. The shipment reservation involved the Nissan Rogue being delivered to 3050 St. Catherine Street, Florissant, Missouri. As previously stated, the vehicle was shipped from Los Angeles to St. Louis for the purpose of transporting drug proceeds from St. Louis to Los Angeles.

45.    Based on records from businesses and ███████████, investigators believe Madison utilized both the **Subject Account** and the email account of rainamadison93@gmail.com to correspond with co-conspirators as well as businesses to facilitate money laundering and drug distribution. Specifically, Madison utilized the Google E-mail address, rainamadison93@gmail.com between the dates of November 12, 2015 and October 4, 2017 and the **Subject Account** between the dates of October 22, 2014 and April 26, 2017. While investigators have received and analyzed large amounts of records, they have not received all business records related to purchases made by Madison or those potentially made without the knowledge of investigators. Therefore, investigators believe that through the examination of e-mail correspondence with other, potentially unknown, business entities, Madison's historic e-mails from the **Subject Account** could lead to the identification of additional modes of money

17

laundering and/or drug distribution. Investigators also believe that access to emails to and from the **Subject Account** between October 1, 2014 and May 26, 2017, will enable investigators to examine communications between Madison, other members of the DTO, and identify additional, unknown, co-conspirators. Additionally, investigators believe that these emails will contain evidence of violations of the subject offenses.

46.    On October 11, 2019, Special Agent Jarryd Powell received certified records from Oath Holdings Inc. The records indicated that the **Subject Account** was created on Sunday, November 25, 2012 and is still active. The records further sate that the Subject Account has the following "Attributes:" Full Name: Raina Madison; Phones: 13238393012; and Alternate Email Address: rainamadison93@gmail.com. The last time the account was logged into was on October 4, 2019 at 23:11 Universal Time Coordinated. Based on these certified records as well as the information reported in paragraph 12, your affiant believes e-mails containing evidence of violations of the subject offenses will still be in the **Subject Account**.

## CONCLUSION

47.    Based on the forgoing, I request that the Court issue the proposed search warrant. The United States will execute this warrant by serving the warrant on the Provider. Because the warrant will be served on the Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

48.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution,

destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

_____

Robert Lang
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on _____ day of October 2019

_____

Honorable SHIRLEY P. MENSAH
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with rainamadison93@yahoo.com that is stored at premises owned, maintained, controlled, or operated by Oath Holdings Inc., a company headquartered at 701 First Avenue, Sunnyvale, California 94089.

# ATTACHMENT B

## Particular Things to be Seized

## I.  Information to be disclosed by Oath Holdings, Inc (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on September 23, 2019, the Provider is required to disclose the following information to the United States for each account or identifier listed in Attachment A:

a.  The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.  All records or other information regarding the identification and subscriber of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.  The types of service utilized;

d.  All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

e.     All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

f.     Any and all cookies associated with or used by any computer or web browser associated with the account, including the IP addresses, dates, and times associated with the recognition of any such cookie;

**The Provider is hereby ordered to disclose the above information to the United States within 14 days of the date of this warrant.**

## II.    Information to be seized by the United States

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 21, United States Code, Sections 846 and 841(a)(1) and violations of Title 18, United States Code, Sections 1956 and 1957, those violations involving **Raina Madison** from October 1, 2014 and May 26, 2017, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Evidence relating to the sale and distribution of controlled substances; communications relating to financial transactions involving the purchases of vehicles and airline tickets; communications between Raina Madison and airlines including Southwest Airlines and American Airlines; communications relating to the purchase or rental of storage facilities, including Public Storage Property; communications relating to shipping and transporting companies including U-HAUL, Nationwide United Auto Transport, and Montway Auto Transport; communications between Kashita Webb and Raina Madison; communications between Rachel Madison and Raina Madison; communications between Raina

2

Madison and Andon Templer; communications between Raina Madison and Walter Justiniano; communications between Raina Madison and Gerald Hunter.

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to the sale or distribution of controlled substances and the laundering of drug proceeds, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any United States personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, analysts, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agents may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the United States and their support staff for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct. I am employed by Oath Holdings, Inc., and my title is

_____. I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved. I state

that the records attached hereto are true duplicates of the original records in the custody of Oath

Holdings, Inc.. The attached records consist of _____ **[GENERALLY DESCRIBE**

**RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Oath Holdings, Inc., and they were made by Oath Holdings, Inc. as a regular practice; and

b. such records were generated by Oath Holdings, Inc.'s electronic process or system that produces an accurate result, to wit:
1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Oath Holdings, Inc. in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Oath Holdings, Inc., and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of

the Federal Rules of Evidence.

_____     _____
Date                          Signature

4